Today we have four cases on the calendar, two are orally argued, and two are submitted on the record, on the briefs. For the purposes of the tape, I will give the names of the two cases that are submitted on the briefs. First one is 067198, Flores v. DBA. The second is 07-3008, Bainey v. Justice. First case for oral argument is 061260, Acumed v. Stryker Corporation. Mr. Vogler, you are reserved five minutes for rebuttal. I presume you are familiar with the lading system? I am, Your Honor. Thank you. Thank you. You may proceed. Thank you. May it please the Court. The jury's infringement will extend from the District Court's erroneous claim construction. There is a deeply flawed Markman hearing and analysis. It started with the dictionary and never properly analyzed the intrinsic evidence. It got off track with extrinsic attorney drawings that were shown not for the purposes of what was at dispute or what the subject matter was, but for purposes of changing the dictionary meaning to something it wasn't. The District Court had two fundamental errors with its dictionary approach. The first one relates to curved shank. The Court started out from the Merriam-Webster dictionary straight out to find curved. The dictionary meaning was to have or to take a turn, change, or deviation from a straight line or plain surface without sharp breaks or angularity. That was the dictionary meaning. Now, we all know dictionary meaning doesn't really answer the entire question because you have to look at the intrinsic evidence, but... Where in the intrinsic evidence would you say supports your position? Let me back up. The dictionary meaning was changed from without sharp breaks or angularity to, read as a judge, change it to be without sharp corners or sharp angularity. Which changed the dictionary meaning from one that would be without angularity, without angles, to one that would allow certain angles as long as they're not sharp. Now, sharp is a word that was never used and has never been used for these type of devices prior to that markman proceeding. It doesn't exist. Sharp doesn't describe these type of products. It just came out of the dictionary. It's not used anywhere in the patent itself. But your request for or your claim construction is, as I understand it, a non-angular continuous bend, correct? Yes. Well, where, as Judge Garza inquired a moment ago, where is the support for that construction in the intrinsic record? Okay. That is supported at column 3, lines 38 to 43, in which it describes... It's curved over a significant fraction of its length. That's right. But, of course, if you look at figure 2 and the text that relates to figure 2, I guess figures 1 and 2, the text describes this embodiment anyway as having three straight portions, 14, 18, and 20, and an arcuate portion 16. So the shank 12, which consists of the arcuate portion 16 and two straight portions 18 and 20, is certainly not a continuous bend because there are straight segments. That's correct. But the definition you proposed came out of the spec as far as when it talks about curve. Non-angular continuous bend over a significant portion of the length. We didn't say it had to be the entire length. It had to be a significant portion. Where in the spec does it say non-angular, though? In fact, you know, look, I think it's simple geometry. When a straight line meets a curve, there's an angle there, right? You have to go from a straight line to a curve. As Judge Lynn pointed out, the shank includes 16, 18, and 20. So a curved shank, which is only the curvature is 16, it meets the straight portion 18. By virtue of simple geometry, doesn't there need to be an angle where a curve meets a straight portion? I don't think I agree with that. It just continues the line, and then the line starts to bend with the curvature. So I don't think there's an angle there. Look at figure 2. Figure 2 shows a clear angle between the butt and the shank, for example. Doesn't it? I mean, how can you say that's continuous between the butt and the shank? The butt is straight. The shank begins to curve at the first tapered portion at the beginning of 16. Clearly there's an angle there. In fact, they even show how the line would continue on if it were to go straight, and they show the curved axis 22. So how is that not an angle between the butt and the tapered shank portion? Well, the claim term is curved shank. It's not the butt. Okay? You're confusing, I think, the butt and the curved shank as being one and the same, and that's not our position. The position is the claim language talks about the shank has to be curved, and that's what I think you need to refer to, not the transition between a butt and a shank, because that's not what the claim is all about. So now when you look at the proper context, the curved shank, as required by the patent as we see it, is curved. You know, the dictionary would mean a curve. Are you referring back to the curved shank in the claim language, an elegated body having a curved shank configured to occupy the upper portion? That's the term that we believe was erroneously interpreted by the district court, curved shank. What is meant by curved? That's what's before us. But where would the angle be? Why wouldn't there be an angle when there's a change, as Judge Moore points out, from the shank to the lower portion of the nail? Well, I guess the answer to that is there's no testimony that's an angle, and I don't see it as an angle. We're talking about the curved portion. What is meant by the curved portion, and what is the definition of curved? Counsel, you said that the specification supports your non-angular continuous bend over a significant part of the leg, and I was hoping you were going to direct me to where you come up with the non-angular part. The non-angular, as we propose it, relates to definition that curved does not include angles. It's that simple. The court, district court. Does the word bend or bent include angles? I don't think so. The curved. The word bend or bent does not include angles. Doesn't Stryker refer to its own product as containing a bend? Okay. Stryker refers to its product as having an angle bend. That's a little different terminology. The patent itself refers to angle bends as being something then curved. The patent itself basically says, I'm paraphrasing here, but basically it says angle bends are not good. But isn't there a whole slew of prior art? I realize the Stryker product is, of course, not prior art, and the Stryker patent was 10 years after the patent had issued, so it, too, is not really prior art. But isn't there a whole slew of prior art that was cited in this prosecution history, the 507 patent, the 313 patent, the 296 patent, the 202 patent, all which appear to have angular designs and refer to those as bends. They don't say non-angular bends or angular bends or non-angular bends. They just call them bends. They call them bends, possibly. Let's back up a little bit. The patent itself refers to angle bends as being something different than a curve. Okay? It just does. It's different. Our accused product has an angle bend. No, no. Counsel, where does the patent refer to angle bends as being something different than curved? At column three, line 45, objects with angle bends or small radius curves relative to the object length do not pass through their own envelope for insertion. Okay, wait. No, so they don't say all angle bends. They say angle bends that do not pass through their own envelope for insertion. Because, I mean, certainly you would have to concede, if the angle bend was a one-degree angle and it was a very short object, it could pass through its own envelope. Well, that's a question of fact. But it seems an obvious one. Well, now we're talking about potentially document equivalence versus literal. Now, let's back up here. There was no document equivalence analysis. The whole case related to literal infringement and what is meant by curved shank. Okay? Curved shank, the dictionary means, says without angularity, no angles. It was changed to be including some angles, yet undefined what sharp is. No one knows what sharp is. And the only way they could find literal infringement in this case of our angle bend was to change the meaning of curved shank to include an angle bend. And that's where we didn't get our getting caught, because this is not a literal infringement case. A curve does not and cannot include an angle bend. And then if you get into the document equivalence, and why they didn't want to go with the document equivalence, they had problems, because that's when you bring in, is it usable with a broach, or is it not? What was the patent trying to accomplish with the curve? And that's where this case got off its track, right there. And the second issue is transverse. The patent itself defines transverse. It used the word defined. And that's at column 2, lines 56 to 88. It says, further, figure 2 further illustrates a plurality of transverse holes, each of which is defined on their respective axis intersecting the nail axis 22 and perpendicular to the portion of the nail axis at the butt portion. The drawings show transverse holes being perpendicular. The spec defines it as being perpendicular. The court's interpretation basically read out the requirement of transverse. The accused products have only two holes perpendicular. The claims require at least three. So there's no literal infringement. There's been no argument of document equivalence infringement in that case. Mr. Bogley, you're well into your rebuttal time. Do you want to save your rebuttal time? I will. Thank you. Thank you. Mr. Laney? Good afternoon. You may proceed. My name is Chris Laney. I'm here with co-counsel Paul Vickery and a representative. I'd like to address real quickly. Mr. Vogler made the assertion that they always describe the striker nail as having an angled bend. I'd like to draw the court's attention to the appendix page A2009. If you look at A2009, in particular, the last two bullet points on the right side. And if you look at the last two bullet points, the first one reads, the curvature of the nail allows insertion at the standard entry point, i.e., the lateral entry point, just inside the greater tuberosity. Now, what's key about that is they're describing their nail as having a curvature. Now, let's juxtapose that as to how the patent views curve. And this illustrates that curve has an understood meaning. But if you go to page 648, appendix 648, or if you have a patent, you go to column 4, line 23. Column 4, line 23 states, the curve of the nail 10 permits its insertion through an aperture between the ball and the greater tubercle at the top of the humerus. So both of these documents, both striker as well as the patent, describe this curve as permitting it to go through what striker calls a standard entry point. Moreover, as Judge Moore pointed out, they described their nail as having a 6-degree lateral bend. They don't say it's an angled bend, they say it's a 6-degree lateral bend. But I think what's key on their description of that, again turning to A2009, they say, it's how they describe this bend. They describe the bend as allows insertion of the nail along an almost straight path. Well, that juxtaposed perfectly with the way the 444 patent describes that the curve is able to follow its own envelope. Now, striker tries to argue that the nail of the 444 patent is limited to a shape that is able to pass through its own envelope. Well, how do we know that? Why do I say that? I say that because they say this thing has to exclude any and all amounts of angled bend and small radius curve. Well, we've asked them numerous times to define, well, what is it? You're going to ask the court to exclude something from the definition. What is the boundary that you're excluding? What are you excluding? They have never once been able to ask that question. So we turn to the specification. Well, what does it say an angled bend or a small radius curve is? It says that it's something that does not, if you have angled bend or a small radius curve, you do not pass through your own envelope. Now, what's key about this is it later goes on and says, hey, wait a minute, the preferred embodiment does not pass through its own envelope perfectly, which suggests that it has some angled bend or small radius curve. So it's clear from even the specification that excluding any and every amount of angled bend just isn't the proper construction. Moreover, including the limit... Well, counsel, wait a minute. What about, I mean, a small radius curve? It's still a curve and it doesn't pass through its own envelope because it's a small radius curve. So maybe curve should be construed, like they say, as excluding angles, but maybe whether it passes through its own envelope is only relevant to the radius of the curve. I guess I'm not sure I'm following the question. First off, you're trying to suggest that Stryker says they want this claim limited to something that passes through its own envelope, but I haven't seen them argue that. I don't think that when they argue the claim construction means a long, narrow part of the nail having a non-angular continuous bend necessarily means that it necessarily has to pass through its own envelope. I just don't see that. Well, they do say that it cannot have any amount of angled bend or small radius curve, but we don't know what that means except for what the specification tells us, which it tells us if you have small radius curve or if you have angled bend, it does not pass through its own envelope. So you can't separate the two, and there's never been any construction of what angled bend or small radius curve means, what are the boundaries of what it is you're going to exclude, other than the specification stating that if you have it, you don't pass through your own envelope. Are you suggesting the claim is limited to something that does pass through its own envelope? I absolutely do not think it has to pass through its own envelope. In fact, if you look at Dependent Claim 13, Dependent Claim 13 specifically says Claim 1 having a profile that substantially passes within its own envelope. Now, the doctrine of claim differentiation, although it is a presumption, it's not hard and fast rule, that in and of itself, though, gives us a presumption that Claim 1 is broader. Counsel, you have a stronger argument that you probably just haven't gotten to. I'm sure you were going to bring it up, but on Column 3 at Lines 38, it says because the nail tent is, quote, gently curved, it is said to largely pass through its own envelope. Well, gently curved, to me, is a much narrower term than curved, as used in Claim 1, and gently curved only largely passes through its own envelope. So then what does curved do? It might not pass through its own envelope at all, right? It's not required by the claims. Right, right. So it seems to me that Claim 1 is not limited to something that passes through its own envelope, even substantially, not just because of claim differentiation, but because of the definition in the specification. But, again, I just don't see them making the argument that it is. And if I'm wrong, explain to me how they are. Well, I don't know what the meaning of angled bend or small radius curve is. What does that mean? I mean, their argument is that their definition excludes any and all angled bend or small radius curve. And so I only submit I think that they're getting that by trying to exclude any and all angled bend or small radius curve. But they're getting it directly from the specification. In Column 3, Lines, let's see, 44, objects with angled bends or small radius curves relative to the object length do not pass through their own envelope on insertion. Correct. So what does that mean? So it means something with an angled bend or small radius curve does not pass through its own envelope on insertion. But if you look at the preferred embodiment, it describes even the preferred embodiment beginning on that same column, Line 51, it says even the preferred embodiment doesn't pass perfectly through its own envelope. And they're not well suited for insertion into a broached hole. And that's the other key. The other key is they try to say this thing has to be able to be used with a broach. That its necessary part in order to define curve, it has to permit the nail to be used with a broach. And I think this file history is clear that the use of a broach is a distinctly separate invention than the nail itself. The nail is designed to secure fragments of the proximal humerus. The use of a broach was a method that is described in the specification, but the examiner said you have to make an election. The use of a broach is a distinctly separate invention. And that is at, if you look at Appendix 797 and 786. On 797 the examiner clearly states that Group 1 is to the nail itself. And then Group 3 is a method for implanting the nail, namely using the broach. The examiner said these are two distinctly separate pick one. So the examiner did. It picked one. It picked Group 1, the nail itself. And the district court recognized that. But they have to be used together? Absolutely not. Or just independently? If they had elected to go with a method claim that used a broach, they would have had to be used together. And yes, the broach may have had some, may have impact on what type of nail and shape of nail you could use with a broach. But Claim 1 is broader. Claim 1 doesn't have to be used with a broach. Therefore, it's broader. What other section of the specification supports the idea that it's broader than a broached hole? Because the only place I see anything other than using this in a broached method is at Column 3, Line 33 when they talk about a rotating drill bit or a reamer, but they go on to say why those are no good because they cause tissue damage and other problems. So where in the spec do we find support for the notion that this should be read more broadly, like you're suggesting now? Well, first I would disagree that it says using reams and drills are no good in every case. It does say that the broached hole has its benefits and that in some cases a drill and a ream would not be ideal. But to answer your question, the entire spec talks about the nail in the context of using a broached hole. I think the broadening of it comes from the fact that Claim 13 makes it clear that the curve of Claim 1 does not have to pass through its own envelope. Moreover, I think the fact that, well, this Court's line of cases in E-Pass and Go-Lite as well as the most recent Ventana v. Medical Systems, this Court made it clear that a specification can close multiple interventions and the claim doesn't have to encompass every feature, every benefit that's described. And I think this is exactly that type of case. But it can't be used without the broached hole, right? Oh, it can be used without the broached hole. In fact, it is every day. How is it? How is the hole made for insertion of the nail? With an awl. It's called an awl, which is a medieval-looking thing that cuts into the bone. And then sometimes I think you still use a ream or a drill, but AccuMed supplies that. With this patented device, supplies that, and surgeons have the option. They can use our broach or they can use a drill or reamer, and then they just insert it right on the other side of the greater tubercle. With and without the broach? Usually without the broach from the testimony provided. In fact, our own expert testified he's only used the broach once, and that was the very first time to create the video showing the use of the broach. Every other hundred or so times he never used actually a broach. So the broach isn't critical to inserting this nail and for it to perform its stated function, which is to secure the fragments of the proximal humerus to the foundation, which is the nail itself. I'd also like to address the issue of transverse holes. In particular, the suggestion that transverse holes is necessarily defined as perpendicular. There are several arguments against this, and I think probably the most convincing one is the fact that the patentee knew how to say perpendicular. He didn't say perpendicular in the claims. He said transverse, and by transverse, transverse has a broader meaning. It means across. Now, how do we know that he meant the broader meaning? Is there anything in the specification that tells us, and the answer is absolutely. If you look at column 2, line 1, it says around line 45, the butt portion has transverse holes oriented at select angles to receive fasteners, attachments to the… I'm not with you, but you've got to remind me again where you are, please. I'm sorry, column 1, around line 45. Okay. And you see where it says the butt portion has transverse holes oriented at selected angles to receive fasteners attached to the fragments. It says the same thing in the abstract. Now, what's key about that is that indication right there, it's talking broadly. It's saying selected. It's saying user can design… Counsel, those are not the angles with reference to the axis where you talk about perpendicular, though. When you talk about perpendicular, you're talking to the nail axis at the butt portion. Clearly, if we look at figure 2 or figure 1, either one, you do see that the holes are at different angles at different places in the butt, but with regard to the axis, they're all perpendicular. So I don't necessarily see column 1, lines 45, suggesting that transverse holes means broader than perpendicular with regard to the nail axis. It all depends on where you're going to measure the angle from, right? I mean, so certainly they're going in at different angles. You've got a cylinder, and they're going in at all different angles, but they're always perpendicular to the nail axis, the butt. The preferred embodiment is correct that they're always perpendicular, but the question is, are they limited to perpendicular? Is there any disclosure that says, that indicates that when you use transverse and when you describe the invention, that it's limited to having an axis that's perpendicular to that? And I think the answer is no. By talking in broad terms, by saying you can select the angle... But the angle that you're selecting is not the angle relevant to the nail axis. I completely disagree, Judge. When it says selected angles of the transverse holes, it's saying the angles of the holes relative to each other, namely the hole axes, the axes of the hole. That's different from the axis of the butt, which is the relevant axis point. We're defining transverse hole, though. But transverse hole in relation to what? Transverse in relation to what? Transverse in relation to the butt portion, correct. And it could be... And our position is that it's across the butt portion. Mr. Laney, before you finish, and I know you're almost out of time, even if we were to affirm the claim construction and affirm on the merits, the district judge here granted the permanent injunction with the following statement. The general rule is that the injunction will issue once infringement and validity have been adjudged. In light of eBay, aren't we required to at least vacate and remand that back for determination of the customary permanent injunction factors? I don't... I see that I'm out of time, if I may answer the question. Please, why don't you go ahead and answer it. We don't agree that you're necessarily required to send it back because this court reviews judgments, not opinions. And I think the court made ample factual support that would support even under the facts, the factors, irreparable harm, inadequate remedy monetarily, balance of harms, and as well as the need for the device. I think the court made sufficient factual findings that would let this court uphold the judgment. In particular, she found that this was the world's largest orthopedic company that set out to deliberately copy and drive our company out of the market. And by taking away 75% of market share, I think patent law, if it does anything, at least it gives you a right to control who you're going to compete against. And while they've licensed it to other people, surely they have the right to tell one company that they know their intent is to drive them out of the market to say, I'm not going to compete against you. You're not allowed to practice my device. But the district court's consideration of those factors was in the context of the request for a stay and not necessarily as a review of the propriety of the injunction itself. And Judge, I agree with that completely. And to the extent the judge would like the court to do, in the first instance, use her own discretion, I would agree the appropriate action would be to vacate and have her do that. However, I would only say that the facts she did find would support the judgment she reached. I thank you. I'm out of time. Thank you, Mr. Lenny. Mr. Vogler, you have four minutes. Thank you. On the curb shank, the issue is whether the district court erred as a matter of law. And the analysis was taking the dictionary meaning, one that included without angularity, to now include one that included some form of angles, which is contradicted by the dictionary meaning itself and also contradicted by the spec, which says angled bends are not appropriate. Now, Stryker also proposed a second component to that, and that was claim disavowed. And that's where we added the language, it should be used with a broach, and angled bends. But the claim is not restricted to a broach. I understand that. Again, there's two components to the claim construction. One was what is meant by curb shank. We've gone over that. The second one is whether there's claim disavowed based on statements in the spec that, you know, the use of a broach is important as one of the features of the invention, and shanks with angled bends or small raised curbs are things that you stay away from for the reasons they said, you know, to not have tissue damage and things like that. Now, and the district court rejected that. So there's two components to it. But the error that we are submitting was the definition of curb, which did not give us a fair opportunity to present our case to the jury because, if anything, it should have been a document equivalence issue, whether our product, which we, our testimony was an angled bend, and, you know, the reference of Mr. Laney to the document in the appendix was, is a physician manual. You know, it's not the engineer's and it's not, you know, a lawyer's testimony. It's just a physician manual. It refers to a six-degree lateral bend right below the passage he identified. But what we didn't get in court was the proper, what the proper analysis should have been. It wasn't lateral infringement because if you take the definition of curb, whether with a dictionary, which we would have accepted the regular dictionary meaning because it meant without angularity. But then where it became a problem was the court did not stop there. The court then took it to mean something it wasn't meant to mean and something that's contradicted by the spec. They clued angles. And so we did not get our day because it became an issue of literal infringement versus document equivalence. And if you go to the document equivalence, then it's a question of fact. Then you bring in the issues of wave function result. Then you look into whether broaching is significant or not. And then you will find, as our experts testified, that a shank with an angled bend, it's a term of art in the industry, is different. RT to nail cannot be used with a broach. Cannot be used with a broach. We cannot accomplish any of those benefits. And that should have been the proper analysis. And that's where this court went wrong. That's where the district court went wrong. It was changed from a case that might have been a document equivalence case to a literal infringement because they changed the meaning of curve to something that's not in the dictionary and something that's not supported by the spec. And how did they do that? They used attorney drawings of makeshift products saying these will work. They have an angled bend. They'll work in a broached hull. And that was extrinsic evidence which was improper. And that's how this case got messed up. And that's why we didn't get a fair deal. And as far as transverse... Mr. Bolger, you're out of time. I think the argument is complete. I appreciate it. Thank you. Thank you very much. Case is submitted.